DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1105,

v.

REPUBLIC STEEL CORPORATION and Edward Yakubco, Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1106,

v.

ALLEGHENY RIVER MINING COMPANY, Old Republic Companies, and Bertha Ruston (Widow of Samuel Ruston), Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1107,

v.

CONSOLIDATION COAL COMPANY and Josephine Paulian (Widow of Dawton Paulian), Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1108,

v.

REPUBLIC STEEL CORPORATION and Andrew Bordas, Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1109,

v.

UNITED STATES STEEL CORPORATION and Mike Mrosko, Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1110,

v.

UNITED STATES STEEL CORPORATION and Jennie M. Sabatini (Widow of Michael Sabatini), Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1111,

v.

UNITED STATES STEEL CORPORATION and Julia C. Ward (Widow of Donald V. Charlton), Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1309,

v.

BELTRAMI ENTERPRISES, INC. and Lackawanna Casualty Company and Alice Houston (Widow of Daniel Houston), Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1310,

v.

BETHLEHEM MINES CORPORATION and Edna M. Fye (Widow of Merle Fye), Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1311,

v.

DUQUESNE LIGHT COMPANY and George Jenkins, Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1312,

v.

NATIONAL MINES CORPORATION and Old Republic Companies and James Gehron, Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNIT-

ED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1313,

v.

UNITED STATES STEEL CORPORATION and Louise Solomon (Widow of George Solomon), Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1314,

v.

REPUBLIC STEEL CORPORATION and Hazel Oberlitner (Widow of Frank J. Oberlitner), Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1315,

v.

REPUBLIC STEEL CORPORATION and William J. Kozakiewicz, Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1320,

v.

BENJAMIN COAL COMPANY and Old Republic Insurance Company and Edith Biss (Widow of Harry Biss), Respondents.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner in No. 81–1321,

v.

REPUBLIC STEEL CORPORATION and Joseph Venick, Respondents.

Nos. 81–1105 to 81–1111, 81–1309 to 81–1315 and 81–1320, 81–1321.

United States Court of Appeals, Third Circuit.

Argued Sept. 25, 1981.

Decided Oct. 23, 1981.

Rehearing and Rehearing In Banc Denied Dec. 11, 1981.

Denise Butler Harty, (argued), T. Timothy Ryan, Jr., Sol. of Labor, Virginia B. Ragle, Acting Asst. Co-Counsel for Black Lung Benefits, Donald S. Shire, Associate Sol., Judith E. Wolf, Co-Counsel for Black Lung Benefits, Laurie M. Streeter, Associate Sol., Cornelius S. Donoghue, Jr., Acting Associate Sol., Judith E. Kramer, Co-Counsel for Black Lung Benefits, U. S. Dept. of Labor, Washington, D. C., for petitioner.

Margaret D. Blough (argued), Ronald J. Zera, United Mine Workers of America, Pittsburgh, Pa., for respondents Edward Yakubco in No. 81–1105; Josephine Paulian in No. 81–1107; Andrew Bordas in No. 81–

1108; Hazel Oberlitner in No. 81–1314; William J. Kozakiewicz in No. 81–1315; Joseph Venick in No. 81–1321.

Edward A. McFarland (argued), Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for respondent Republic Steel Corp. at Nos. 81–1105, 81–1108, 81–1314, 81–1315, 81–1321.

Mark E. Solomons, John L. Kilcullen, Kilcullen, Wilson & Kilcullen, Washington, D. C., for respondents Allegheny River Mining Company and Old Republic Companies at No. 81–1106, National Mines Corporation and Old Republic Companies at No. 81–1312, and Benjamin Coal Company and Old Republic Companies at No. 81–1320.

J. Randolph Query III, Jackson, Kelly, Holt & O'Farrell, Charleston, W. V., for respondent Consolidation Coal Co. at No. 81–1107.

James D. Strader, U. S. Steel Corp., Workers' Compensation & Casualty, Pittsburgh, Pa., for respondent United States Steel Corporation at Nos. 81–1109, 81–1110, 81–1111, 81–1113.

Joseph P. Lenehan, Lenehan, Dempsey & Piazza, Scranton, Pa., for respondents Beltrami Enterprises Inc. and Lackawanna Casualty Co. at No. 81–1309.

John J. Bagnato, Robert G. Rose, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, Pa., for respondent Bethlehem Mines Corp. at No. 81–1310.

Diane S. Eismont, Duquesne Light Co. Legal Dept., Pittsburgh, Pa., for respondent Duquesne Light Company at No. 81–1311.

John M. Elliott, Constance B. Foster, Lawrence G. McMichael, Alexandra D. Sandler, Philadelphia, Pa., for amicus curiae, Pennsylvania Coal Mining Association; Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., of counsel.

Before ALDISERT, HIGGINBOTHAM and SLOVITER, Circuit Judges.

### OPINION OF THE COURT

PER CURIAM.

This petition for review of Benefit Review Board decisions in sixteen related black lung benefits cases requires us to determine whether the Board correctly held that § 435 of the Federal Coal Mine Health and Safety Act, as amended, 30 U.S.C. § 945, does not require certain black lung benefit claims to be paid by individual coal operators. The claims in question were filed by miners or their survivors prior to July 1, 1973, and denied. Congress amended the Act in 1977 to permit reconsideration of the claims. The Department of Health, Education, and Welfare reviewed and approved the renewed claims and certified them for payment to the Department of Labor. In all but one of the sixteen cases,[¹] the presiding Department of Labor administrative law judges determined that the respective employers were liable for the payments.

On appeal, the Benefits Review Board held that the 1977 amendments do not modify an earlier statutory scheme that required individual employers to pay benefits only for claims filed after December 31, 1973. The Board concluded that the instant claims should be paid from the Black Lung Disability Trust Fund. *Yakubco v. Republic Steel Corp.*, [1980] 2 Black Lung Rep. 1–1116 (Matthew Bender). Petitioner, in the role of administrator of the Fund, invokes our jurisdiction under 33 U.S.C. § 921(c) (as incorporated by 30 U.S.C. § 932(a)) and challenges the Board's interpretation of § 435. We have examined the decisions of the Board and find no error in the Board's interpretation of the statute. Therefore, for the reasons set forth by the Benefits Review Board in *Yakubco*, the petition for review will be denied.

SLOVITER, Circuit Judge, dissenting.

I respectfully dissent from the decision of the majority. Because the issue has not previously been treated by any court, I set forth my reasons in somewhat more detail than has the majority.

### I.

The Black Lung Program was established by Title IV of the Federal Coal Mine Health and Safety Act of 1969, Pub.L.No. 91–173,

83 Stat. 742 (1969) (current version at 30 U.S.C. § 901 *et seq.* (1976 & Supp. III 1979)) to provide benefits to coal miners totally disabled by pneumoconiosis (Black Lung). It was originally contemplated that the burden of payment of benefits initially shouldered by the United States from its general revenues (Part B of the Act) would ultimately shift to the coal mine operators through state workmen's compensation programs (Part C of the Act).

In amendments passed in 1972, Congress broadened coverage, reduced the eligibility requirements, and extended the dates for the applicability of Parts B and C. Under Part B of the Act, claims filed between December 30, 1969 and June 30, 1973 were to be adjudicated by the Secretary of Health, Education, and Welfare and paid by the United States. Under Part C, claims filed after December 31, 1973 were to be administered by a state workmen's compensation agency which met minimum regulatory standards. In the absence of such an approved state plan, claims were to be filed with and adjudicated by the Secretary of Labor, and paid by the responsible coal mine operator. The mine operator was to be held liable for claims filed after June 30, 1973, for benefits accruing on or after January 1, 1974. The Department of Labor would pay benefits when a responsible operator could not be determined or failed to pay. Finally, section 415 dealt with treatment of transition claims, those filed during the period between the effective dates of Part B and Part C, which is not at issue here. Black Lung Benefits Act of 1972, Pub.L.No. 92–303, 86 Stat. 150 (1972).

In practice, federal liability for the vast majority of Black Lung claims continued, in part because no State workmen's compensation law had been deemed "adequate" under Part C, and in part because the Department of Labor was only able to identify responsible operators with respect to about 25 to 30 percent of Part C claims. H.R. Rep.No. 95–151, 95th Cong., 1st Sess. 21 (1977), U.S.Code Cong. & Admin.News 1978, p. 237; *see* S.Rep.No. 95–209, 95th Cong., 1st Sess. 7 (1977).

In an effort to remedy this situation, Congress passed the Black Lung Benefits Revenue Act of 1977, Pub.L.No. 95–227, 92 Stat. 11 (1978), which, *inter alia,* created the Black Lung Disability Trust Fund, a fund supported through an excise tax on coal sales. The Fund is to be used to pay benefits when the operator liable for the payment of such benefits has not commenced payment of such benefits within 30 days after the date of initial determination of eligibility by the Secretary, or has not made a payment within 30 days after that payment is due, or when there is no operator who is required to secure the payment of such benefits. 30 U.S.C. § 934(a)(1). The companion legislation, the Black Lung Benefits Reform Act of 1977, Pub.L.No. 95–239, 92 Stat. 95 (1978), broadened the entitlement provisions. For example, the Act now expressly provides that when a miner is deceased, affidavit evidence shall be sufficient to establish a claim in the absence of medical evidence, 30 U.S.C. § 923(b), and strengthens the statutory presumption that miners who worked in mines for a certain number of years are entitled to benefits. *Id.* § 921(c)(5). In line with this liberalization of entitlement, the 1977 Amendments also provided that those persons whose claims had been denied under the more restrictive standards previously followed would have an opportunity to have their claims reviewed under the new standards. This was the purpose of newly enacted section 435 which is at the center of this appeal.

Section 435 provides in part:

(a)(1) The Secretary of Health, Education and Welfare shall promptly notify each claimant who has filed a claim for benefits under Part B of this subchapter and whose claim is either pending on March 1, 1978, or has been denied on or before that date, that, upon the request of the claimant, the claim shall be either—

(A) reviewed by the Secretary of Health, Education, and Welfare under paragraph (2) for a determination based on the evidence on file, taking into account the amendments made by the Black Lung Benefits Reform Act of 1977; or

(B) referred directly by the Secretary of Health, Education, and Welfare to the Secretary of Labor for a determination under paragraph (3), with an opportunity for the claimant to present additional medical or other evidence in accordance with that paragraph, taking into account the amendments made by the Black Lung Benefits Reform Act of 1977.

(2)(A) The Secretary of Health, Education, and Welfare shall approve forthwith each claim for which review is requested under paragraph (1)(A) if, based upon the evidence on file, the provisions of part B of this subchapter, as amended by the Black Lung Benefits Reform Act of 1977, require such approval. The Secretary of Health, Education, and Welfare shall certify such approval to the Secretary of Labor and such approval shall be binding upon the Secretary of Labor as an initial determination of eligibility. Upon receipt of that certification, the Secretary of Labor shall immediately make or otherwise provide for the payment of the claim in accordance with this part.

(B)(i) The Secretary of Health, Education, and Welfare shall refer to the Secretary of Labor any claim not approved under subparagraph (A) for a determination under paragraph (3), and shall notify the claimant of that referral to the Secretary of Labor for such a determination.

30 U.S.C. § 945(a)(1)—(a)(2)(B)(i).

Respondents concede that those claims which have been referred directly by the Secretary of HEW to the Secretary of Labor at the request of the claimant (section (a)(1)(B) claims) and those claims which have been referred by the Secretary of HEW to the Secretary of Labor because they were not approved by HEW on its review (section (a)(2)(B) claims) must be paid, if approved, by the responsible coal operator. They claim, however, that section (a)(2)(A) claims, those approved by the Secretary of HEW after review, should be treated differently and paid by the Trust Fund.

In cases involving statutory construction, our initial inquiry must focus on the statutory language itself, which often is dispositive. Section 435(a)(2)(A) expressly states that when the Secretary of HEW approves a previously denied claim the Secretary shall "certify" such approval to the Secretary of Labor "as an initial determination of *eligibility*" and that upon receipt of the certification, the Secretary of Labor is directed to "immediately make or otherwise provide for the payment of the claim in accordance with *this part.*" (emphasis added). Since it is conceded that section 435 is within Part C of the Act, the language "in accordance with this part" can only refer to Part C. Under Part C, liability is assessed against the responsible coal mine operator; the Trust Fund must pay only where there is no responsible operator. *See* § 30 U.S.C. § 934. Therefore, I agree with the opinion of Judge Kalaris, the Administrative Appeals Judge who dissented from the decision of the Benefits Review Board (BRB), that it is the coal mine operators, and not the Trust Fund, who are initially responsible for payment of section 435(a)(2)(A) claims. *Yakubco v. Republic Steel Corp.*, [1980] 2 Black Lung Rep. (Matthew Bender) 1–1116, 1–1125 (Kalaris, J., dissenting). A contrary reading of § 435(a)(2)(A) makes the terms "initial determination" and "otherwise provide for payment" superfluous.

The legislative history of section 435 strongly supports this interpretation. The bill which emerged from Conference contained what is now section 435. The Conference Report, after discussing the procedure outlined in section 435, stated:

> For purposes of payment of benefits, *all* claims under review shall be treated as part C claims and shall be subject to relevant part C provisions which require payment of benefits by a coal mine operator, other employer, or by the trust fund established by the Black Lung Benefits Revenue Act of 1977.

H.R.Rep.No. 95–864, 95th Cong., 2d Sess. 22 (1978) U.S.Code Cong. & Admin.News 1978, p. 237, 315 (emphasis added). In discussing the payments for which the Trust Fund would be responsible under the new amendments the Conference Report stated:

The conference substitute provides that the trust fund ... pays benefits in cases in which there is no operator who is required to secure the payment of such benefits or where a liable operator has failed to make payment in a timely manner or cases in which the miner's last coal mine employment was before January 1, 1970 *(irrespective that in cases reviewed under section 435 the claims was [sic] initially filed as a part B or part C claim).*

*Id.* at 25, U.S.Code Cong. & Admin.News 1978, pp. 237, 318 (emphasis added). Finally, in discussing the situations in which an operator would be able to participate in the adjudication of a claim, the Report concluded:

The conference substitute conforms to the Senate amendment in the respect that the Secretary of Labor is a party in any part C proceeding and in retaining the authority of current law for operators to participate in the adjudication of claims for which they may be individually found liable *(including part B claims certified or otherwise referred to the Secretary of Labor by the Secretary of HEW ...).*

*Id.* at 23, U.S.Code Cong. & Admin.News 1978, pp. 237, 316 (emphasis added).

Remarks made on the floor of the Senate also support the interpretation suggested by petitioner, the Director of the Office of Workers' Compensation Programs. Senator Randolph, one of the Senate sponsors of the 1977 legislation who was chairman of the Conference Committee, explained to the Senate:

All denied part B claimants will be given the option of having their claims reviewed based on existing files by the Secretary of HEW or transferred to the Secretary of Labor for review. In the latter case, the Secretary of Labor will treat the claim like a reviewed part C claim. If the HEW Secretary reviews the claim and it is found not approvable, the claimant will have the opportunity to have his or her claim transferred to the Department of Labor for further review based on any additional evidence that the claimant may submit. *If the HEW Secretary approves the claim, it is transferred to the Department of Labor for payment as an initial determination of eligibility. The Labor Secretary will immediately direct that the payments be made from the trust fund or by a responsible operator if a responsible operator is identified. Any responsible operator will have the right to litigate his responsibility and the eligibility of the claimant. If the operator prevails in such litigation, payments to the claimant will cease.*

124 Cong.Rec. S1444 (daily ed. Feb. 7, 1978) (emphasis added). Senator Javits, who contributed significantly to writing the Conference Bill, stated:

Coal mine operators, through the tax revenues to the new trust fund and through liability for individual claims, will be responsible for financing the cost of all benefits, *including claims certified by the Secretary of HEW under the new section 435 of the act.*

*Id.* at S1446 (emphasis added).

These statements are neither isolated nor ambiguous. Neither respondents nor the BRB majority have referred us to contrary statements. Thus, it is clear that Congress intended that pending or denied Part B claims approved by HEW are to be treated, for purposes of payment, as Part C claims, payable by responsible operators.

For the foregoing reasons, I would grant review and reverse the decision of the BRB holding the Black Lung Disability Trust Fund liable for benefits and attorney's fees awarded in these consolidated cases.